St. Louis, Kennett & Southeastern Railroad Company
v. Ballard.

Opinion delivered November 15, 1926.

1. Evidence—opinion as to land values.—In an action for damages to strawberry land from a railroad fire, witnesses acquainted with the values of surrounding lands were competent to testify as to the value of land adapted to strawberry culture, of land set with strawberry plants, and of the comparative productive value of land set with one, two and three-year-old plants.

2. Appeal and error—estoppel to allege error.—Where the railroad company, in an action for damages to strawberry lands from fire, contended in the trial court for a certain measure of damages, it cannot, on appeal, contend for another measure of damages.

3. Railroads—liability for fires—instruction.—An instruction in effect that a railroad company is liable for negligently allowing hoboes to build fires on its right-of-way from which injury resulted to plaintiff's land held proper.

4. Trial—argument of counsel.—Where counsel for defendant asked leading questions from its witness, it was not error to permit plaintiff's counsel to express the opinion that the manner of interrogating witnesses amounted to coaching or cautioning the witnesses.

Appeal from Clay Circuit Court, Eastern District; W. W. Bandy, Judge; affirmed.

Arthur Sneed, for appellant.

Ward & Ward, for appellee.

HUMPHREYS, J. This suit was instituted in the Eastern District of the Circuit Court of Clay County by appellee against appellant to recover damages in the sum of $714.80 for negligently permitting fire to escape from its railroad right-of-way, and from its engine in the operation of its train, destroying about ten acres of strawberries on land belonging to appellee adjoining said right-of-way.

The cause was submitted upon the pleadings, the testimony adduced by the respective parties, and the instructions of the court, which resulted in a judgment against appellant for $585, from which is this appeal.

The record reflects that, during the latter part of October or the first of November, 1923, nine acres of strawberry plants belonging to appellee, which adjoined the right-of-way near Piggott, were destroyed by fire starting near the track of said right-of-way, and that, soon thereafter, another acre of plants was destroyed in the same way. The testimony tended to show that the fire originated either from sparks thrown out from a passing engine or from some old ties that were burning on the right-of-way, or from a fire on the edge of the right-of-way built by a bunch of hoboes camping near the side of the track, who had been there for more than a week, making willow chairs for sale. The foreman of the section where the fire occurred and other railroad employees knew that these hoboes were camping near the track and had been building camp-fires for some time. The foreman saw two of the hoboes building a fire at the edge of the right-of-way on the morning of the day that the berry field was destroyed by fire. Several witnesses testified that it was a common thing for passing engines to set out fire at this point when the grass was dry, and that an engine, which was throwing out a blaze of sparks, passed just before the fire began to spread over the field. One of the witnesses testified that he had often put out fires near this point which had been set out by the passing engines. Appellee, his father, and Lee Knowles, W. C. English and A. B. Cargill each

testified that they were acquainted with land values in that community, and that the lands adapted to strawberry culture were worth $100 an acre, and, when set out in bearing strawberries, were worth $200 an acre. A number of the witnesses testified relative to the productive value of strawberries which had been set out upon the lands in that vicinity for one, two and three years. The strawberries which were destroyed by the fire in question had been planted for two years.

The first contention made by appellant for a reversal of the judgment is that the trial court erred in permitting E. H. Ballard to testify as follows:

"Q. Do you know what is the market value of naked land? A. One hundred dollars an acre. Q. If it is stocked with nursery stock or strawberries like on this, what would it be worth? A. Nursery stock is different to strawberries. Q. Say strawberries? A. One hundred dollars for the strawberries. Q. Making a total of two hundred dollars an acre? A. While we have got as high as seven hundred dollars out of strawberries."

And in permitting Lee Knowles to testify as follows:

"Q. What would it produce? A. It made around $100 per acre, to the best of my knowledge. Q. Did you know what they would produce, these adjoining lands? A. $100 per acre."

And erred in permitting E. H. Ballard to testify as follows:

"Q. You may answer. A. I made $1,100 off of ten acres across over there, and it was a year older than the patch that burned."

The argument is made that this testimony should have been excluded because appellee did not show that the lands about which they were testifying were similarly situated to the land in question, that the cultivation of the crops was not shown to be similar to the cultivation of the berries in question, and that the stand of the plants upon the various tracts of land was the same as upon the tract in question.

These witnesses resided in the community, and were testifying about the value of the lands in that vicinity. They testified that the lands in question had a good stand of berries, how long they had been planted, and the amount in value they had produced each year, which necessarily showed that the berries had been cultivated. The testimony was competent, and properly admitted under the theory advanced by appellant relative to the proper measure of damages upon which the case was tried.

The next contention made by appellant for a reversal of the judgment is that the latter part of instruction number 4 was erroneous. The latter part of instruction number 4 assailed by appellant is as follows:

"If you find from the proof in the case that there is no general market value for that kind of lands in the neighborhood and community, then it will be your duty to find from the proof in the case, as near as you can, what the value of the land was with the strawberries growing on it, and subtract from that the general market value of the land without the strawberries being considered, and your verdict would be the difference. In arriving at a conclusion as to what the value was with the berries on the land, you may take into consideration all of the facts and circumstances in proof."

The first part of the instruction announced the rule that the measure of damages should be the difference between the market value of the land set to bearing strawberries and the market value of the land without growing and bearing strawberries upon it. Evidence was introduced tending to show that land set to strawberries in that community had not been generally sold. The latter part of the instruction was given by the court as a measure for damages in case the jury should find that there was no general market value for lands set to strawberries in that community. Appellant's contention that, unless there was a general market value for such lands in the community, there could be no liability for destroying plants, is not sound. It is not necessary to decide in this

case what the correct rule of damages was, because appellant contended below and procured a trial upon the theory that the correct measure of damages was the difference in value of the land with strawberries growing on it and the value without the berries on it. He cannot be heard, on appeal, to change his theory as to the correct rule for the measure of damages. We think the second clause in the instruction which appellant assailed conforms to the rule for the measure of damages upon which the case was tried at the instance and request of appellant.

The next contention made by appellant for a reversal of the judgment is that instruction number 3, given by the court, in effect told the jury that, if the fire was set out by the hoboes, they should find for appellee. We do not think that appellant has correctly interpreted instruction number 3. It told the jury, in plain and unambiguous language, to find for the appellant unless the fire which destroyed the plants was set out by it or its employees in the operation of its engines, or that it spread from fires permitted to be on the right-of-way of appellant. Appellant was just as responsible for damages caused by the spread of fire from negligently allowing old ties to burn upon its right-of-way, or from fires it negligently allowed hoboes to build at their camp, as by fire that was set out by sparks and cinders thrown into the dry grass from its passing engines. The instruction correctly declared the law applicable to the various phases of testimony introduced in the case.

Appellant's last contention for a reversal of the judgment is that the court allowed O. T. Ward, counsel for appellee, to state in the presence of the jury that Elmer Harwood, one of the witnesses for appellant, had testified that two trains were run to Piggott the day of the fire, instead of one, before he was coached or cautioned. This witness had been asked leading questions by counsel for appellant relative to the number of trains which passed by the strawberry field on that day, for the purpose of refreshing his memory.

In his argument to the jury O. T. Ward expressed the opinion, from the character of questions which had been propounded to this witness, that the manner of interrogation amounted to cautioning or coaching him. Mr. Ward did not state, as a matter of fact, that the witness had been cautioned or coached before he was placed upon the witness stand. As stated above, he simply expressed the opinion that the manner of interrogating the witness amounted to cautioning or coaching the witness.

No error appearing, the judgment is affirmed.